[Jacobs v. The State.]

# Jacobs *v.* The State.

## *Assault With Intent to Murder.*

(Decided May 19th, 1906.  42 So. Rep. 70.)

1. *Criminal Law; Venue; Application for Change; Sufficiency.*—An application for change of venue alleging facts showing that accused could not have a fair trial in the city and the beat in which the city is situated, but merely alleging, without stating any facts, that the feeling was such that accused could not get a fair trial in the county, is demurrable.

2. *Grand Jury; Adjournments.*—Under Local Acts 1898-9, p. 737 and Acts 1894-95, p. 1220, the Grand Juries of the Talladega City Court are properly organized in March and September and may sit, recess or adjourn from time to time unless discharged by the court, or by operation of law; the grand jury organized in March adjourned until May 22nd, unless sooner called together, and it reconvened in April and returned the indictment in this case; Held, its acts were not invalid, as it had a right to sit and deliberate until June under the Acts, unless discharged by the court.

3. *Same; Appointment of Foreman; Discharge; Appointment of Substitute.*—Section 5022, Code 1896, expressly provides that if for any reason the foreman of the grand jury is discharged or excused, the court shall appoint another in his place.

4. *Same; Deficiency in Number; Supplying Deficiency.*—Section 5023, Code 1896, provides that if the requisite number do not attend, or if they attend and are impanelled, and for any reason their number is reduced below the legal requisite, how the court shall complete the panel; and the court, in this instance, complied with the requirements of the section mentioned.

5. *Same.*—It is sufficient if the organization of the grand jury be incorporated in the minutes at any time before the adjournment of the court.  Sec. 22, Acts 1894-95, p. 1220, relates to judgments and decrees, but has no application to general orders.

6. *Jury; Summoning Jury; Special Venire.*—If, for any reason, the Jury Commissioners have failed, or neglected to draw petit jurors for any week or term of the court, the court may, under Sec. 4998, Code 1896, direct the sheriff to summon such number of persons as the court may deem proper to serve as such petit jurors.

7. *Homicide; Appeal; Harmless Error; Evidence.*—Evidence of whether the prosecutor stopped before going to a certain house, after leaving town to go there, is harmless error, and not sufficient to work a reversal, and if error is cured by Sec. 4333 of Code 1896.

8. *Same; Assault with Intent to Murder; Evidence; Admissibility.*
—It is competent for the State to show the condition in which
the prosecutor was found shortly after the alleged assault, by
a witness not shown to be an expert.

9. *Criminal Law; Evidence; Competency; Uncommunicated Motives.*—The assault having occurred at a certain house belonging to a woman, it was not error to sustain an objection
to a question to the woman as to why she opened the door, as
it called for an uncommunicated motive of witness.

10. *Same; Appeal; Harmless Error; Examination of Witness.*—
Certain questions were asked witness, on cross, all of which
sought to lay a predicate to impeach witness, and all of
which were answered in the negative; no effort was made
subsequently to contradict witness. Held, if it was error to
to permit the questions, it was without injury.

11. *Same; Instructions; Weight of Evidence.*—A charge asserting
that no man had a right to assault prosecutor under the
facts developed in this case, is in effect a charge on the weight
of the evidence and violative of Sec. 3326, Code 1896.

12. *Homicide; Self Defense.*—The prosecutor being at the house of
a certain woman by prearrangement with her, was afforded
the protection given the castle, and was under no obligation
to retreat, and had the right to repel an attack or resist a
trespass.

13. *Same.*—The evidence discloses, in this case, that the defendant
was the aggressor, and the doctrine of self defense has no
application, unless it further appears that defendant withdrew from the difficulty in good faith.

APPEAL from Talladega City Court.

Heard before HON. G. K. MILLER.

The defendant was indicted for assault with intent to
murder one Hubbard. The defendant filed a motion
for a change of venue on the following grounds: 1st.
That the defendant is a negro and a member of the negro
race, and that the person alleged to have been assaulted
is a young white man who has lived in the city of Talladega practically all of his life, a member of an influential family and has a great many relatives who are influential citizens in the city and county of Talladega.
That the difficulty occurred on the night of March 28th,
at the home of a negro woman; that soon after the difficulty it was generally reported that Hubbard was seriously injured and much more so than he in fact was,

and numerous threats were made by various persons in the city and county of Talladega against the defendant by white men, and a great many stated openly, and especially the young men in the city, that this defendant ought to be hung, and that Hubbard ought to have shot this defendant or killed him; that a great deal of prejudice was engendered in the county of Talladega against this defendant; that a day or two after the assault, or the next night, an effort was made to organize a mob in the city of Talladega for the purpose of lynching this defendant, and that the solicitor had stated that he had stayed up very late the night after the assault talking to a number of young men in the city of Talladega to prevent them from mobbing this defendant, or of hunting him up to kill him; that such inflamed condition of the public mind and prejudice against this defendant still exists, and there has been a great deal of discussion in regard to the cause, and a great deal of abuse of this defendant until it is impossible for this defendant to obtain in Talladega a fair and impartial trial by an unbiased and unprejudiced jury. 2nd. Defendant states that at the time of the commission of this offense, the grand jury of this court was not in session, but had held two previous sessions and on or about March 11, 1905, had been adjourned until May 22nd, unless sooner called together, and that the city court of Talladega was engaged in the trial of jury cases on its regular jury call for the trial of criminal cases until the 7th day of April, 1905, about three weeks. That no petit jurors for the week of this honorable court beginning on April 10th, 1905, had been drawn by the jury commissioners of the county. That in some manner, said grand jury reconvened on the 7th day of April, 1905, and on the same day returned the indictment into this court charging defendant with assault with intent to murder said Hubbard, the defendant being in jail under said charge, said indictment being returned during the afternoon on said day about 4 o'clock, and defendant's attorneys were notified by the clerk of this court by telephone that defendant would be arraigned on the next Monday afternoon. The defendant says that said grand jury was reconvened

[Jacobs v. The State.]

at such time for the purpose of investigating the charges against him, and on information, which he believes to be true, that it was so ordered to be reconvened at the request of counsel employed to prosecute this defendant, or of the solicitor of this court, who was requested to ask the court to do so by counsel employed to prosecute. That petit jurors for the next week were ordered by the judge mainly for the purpose of trying this case; that fear had been expressed that this defendant would be lynched was given as a reason for these hasty proceedings, and defendant avers that the prejudice so existing against him still exists, and that Hubbard and his friend have been actively engaged in talking against this defendant, and in spreading and creating such prejudice against him that it is impossible for him to obtain a fair and impartial trial. 3rd. That nearly all of the jurors summoned as petit jurors of this court for the week begining Monday, April 10th, are residents of beat 5 in Talladega county, Alabama, the beat in which said city of Talladega is located, a number of them living in said city, and many of them close and intimate friends of the family and relatives of said Hubbard, and it is averred on information which is believed to be true, that some of the jurors summoned have expressed opinions against this defendant, and while the defendant was confined in jail, had stated that if he were released they would head a mob against him.

The solicitor demurred to the application for change of venue because no sufficient reason was set out therein for granting the change of venue; and no sufficient reason is shown why defendant cannot have a fair and impartial trial in said county; and facts are not sufficiently stated to show that defendant cannot have a fair and impartial trial in said county; and the statements contained therein are not stated as facts. but as the conclusions of the pleader. These demurrers were sustained by the court. The defendant then moved to quash the indictment for various reasons not necessary to be here set out. The motion was overruled.

The prosecutor testified that he left town about half past eight o'clock, to go to the house of Hattie Breed-

love, where he had an appointment, and where the difficulty occurred, and he was permitted to testify over the objection of defendant that he made no stop from the time he left the store until he arrived at the house.

KNOX, DIXON & BURR, and WHITSON & DRYER, for appellant.—No brief came to the reporter.

MASSEY WILSON, Attorney General, for the State.— No brief came to the reporter.

ANDERSON, J.—The motion for a change of venue was subject to the demurrer interposed.—*Thompson v. State*, 122 Ala. 12, 26 South. 141. The motion avers facts to show only a state of feeling against him in Talladega, and while it avers that the feeling is such that he cannot get a fair trial in the county, this averment is a mere conclusion, so far as it relates to all parts of the county other than Talladega beat. All things may have occurred as averred in Talladega, yet there are no facts set up to show that the public mind was inflamed against the defendant in other parts of the county. The record also shows that only five out of the 26 petit jurors were from Talladega beat No. 5.

Section 1 of the act of 1898, page 737, provides for the organization of the grand juries on the first Monday in March and September. § 5 of the act of 1895 (Acts 1894-95, p. 1220), provides that the city court of Talladega shall have one term commencing the first Monday in September and ending the last day of the succeeding June. The law puts no restriction as to the time for the deliberation of the grand jury, except that it could not extend beyond the term for which it is organized. It will therefore be observed that the grand jury in session had the right to sit and deliberate until the last day of the succeeding June, unless discharged sooner by the court. The court also had the right to recess the grand jury and reconvene it at any time so long as it had not been discharged by an order of the court, or under the operation of law.

The action of the trial court in excusing the foreman, Thornton, and appointing in his place Edwards, was in compliance with § 5022 of the code of 1896.

The court complied with § 5023 in completing the organization of the grand jury as originally organized. The record shows that J. A. Thornton for a sufficient reason was excused. This reduced the number of jurors to 14, and the court ordered two qualified persons summoned, and the record shows that § 5023 was complied with.—*Peters v. State,* 98 Ala. 38, 13 South. 334.

It was sufficient if the organization of the grand jury was incorporated in the minutes any time before the adjournment of the term.—*Carwile v. State,* (Ala.) 39 South. 220. § 22 of the act of 1895 does not relate to general orders but applies to judgments and decrees in cases.

The petit jury was summoned and organized under § 4998 of the code of 1896, and the motion to quash the venire was properly overruled.

The fact that Hubbard stopped just before going to the house, whether legal or not, was certainly innocuous and could not amount to reversible error.—§ 4333 of the code of 1896; *Morris v. State* (Ala.) 39 South. 608.

There was no error in permitting the state to show the condition in which Hubbard was found shortly after the assault, nor was it necessary for the witness to be an expert in order to so testify.

The confession made by defendant to witness Hood, was clearly material.

There was no error in sustaining objection to the question to Hattie Breedlove: "State what you went to the door for." It clearly called for the purpose or uncommunicated motive of the witness.

There was no reversible error committed in the cross-examination of Hattie Breedlove. If the question laid a predicate for immaterial matter, they were all answered in the negative and no effort was made to contradict her in that respect.

There was no error in permitting the state upon cross-examination to ask the witness what he told Dickinson and Hood.

There was no error in the argument of the solicitor. The evidence showed that Hubbard was in the house under an arrangement with the owner, and for the time being the law accorded him the protection given the castle. He did not have to retreat, and had the right to repel an attack or resist a trespass.—*Crawford v. State,* 112 Ala. 1, 21 South. 214.

The first part of the oral charge excepted to was free from error, as it stated the law of self-defense. If the defendant was the agressor, this eliminates the question of self-defense, unless he had withdrawn in good faith, which was given the jury, in the same sentence, and we cannot reverse a trial judge upon an excerpt from a sentence when the sentence as a whole is correct.

The court erred in the oral charge in saying: "No man had a right to assault Howard Hubbard under the facts developed in this case." This was clearly a charge upon the effect of the evidence, and violative of § 3326 of the code of 1896.—*Gulf City Co. v. Boyles,* 129 Ala. 192, 29 South. 800; *Gafford v. State,* 125 Ala. 1, 28 South. 406.

We have carefully gone over and considered each of the written charges, refused to the defendant, and the action of the court below in this respect was free from error.

For the error pointed out, the judgment of the city court is reversed and the cause is remanded.

Reversed and remanded.

TYSON, SIMPSON, and DENSON. JJ., concur.